UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THARON B. HILL,<br><br>　　　　Petitioner,<br>　　vs.<br>CALIFORNIA BOARD OF PRISON HEARINGS,<br><br>　　　　Respondent. | No. C 06-3080 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　On May 8, 2006, petitioner Tharon Hill, a California state prisoner proceeding pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ of habeas corpus, by which he challenges a 2005 decision by the Board of Prison Terms ("Board") that he is unsuitable for parole. The Court dismissed the petition and directed petitioner to file an amended petition, which he filed on August 22, 2007. The Court subsequently directed respondent to show cause why petitioner's cognizable claims should not be granted, after which respondent filed an answer addressing the merits of the petition and petitioner filed a traverse. Having reviewed the parties' respective submissions and the underlying record, the Court concludes petitioner is not entitled to relief based on the claim presented, and will deny the petition.

**BACKGROUND**

In 1987, petitioner conspired to kill his ex-wife with explosives. After a trial on charges arising therefrom, a Butte County Superior Court jury convicted petitioner of conspiracy to commit first degree murder by explosive, see Cal. Pen. Code §§ 182, 189. People v. Hill, 3 Cal. App. 4th 16, 21–23 (Cal. Ct. App. 1992). The trial court sentenced petitioner to a term of twenty-five years to life in state prison. (Ans. Docket No. 24 at 1.) In 2005, the Board found petitioner unsuitable for parole, on the ground he "would pose an unreasonable risk of danger to society, or a threat to public safety, if released from prison." (Id. at 63.)

In reaching its decision, the Board accepted the following facts taken from the state appellate opinion and the probation officer's report: petitioner conspired with several persons, including his daughter, to kill his former wife, Vicky, "by blowing up her vehicle or mobile home." The final murder attempt was unsuccessful, Vicky having shot and killed one of the conspirators, Peter Hosikins, as he attempted to light the dynamite he had placed next to Vicky's trailer. (Id. at 18–19.)[1]

At the parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense, his behavior in prison, and the opinion of law enforcement on the question of parole. With respect to the commitment offense, the Board found the crime "was carried out in an especially cruel and callous . . . [and] dispassionate manner," showing a "callous disregard for human suffering," including that of others in the area. (Id. at 63.) The Board also found the motive for the crime was "very trivial in relationship to the offense" in that petitioner sought to have his former wife murdered because she had left him and/or because she had allegedly taken money from him. (Id. at 64.) The Board noted that petitioner had a minor criminal history, having been arrested twice before the commitment offense occurred, without having been convicted, (id. at 12, 28–29), and that while in prison, petitioner had received only one

---

[1] Vicky did not intend to kill anyone; she fired into the dark, hoping to frighten away what she thought were prowlers. (See id.)

2

1  minor disciplinary reprimand and no serious disciplinary reprimands.  (Id. at 41.)  The
2  Board also acknowledged that petitioner had participated positively in a number of self-
3  help programs, and was developing "positive communication skills," and other skills, and
4  "taking responsibility" for his "feelings and actions."  (Id. at 39–40.)  The Board also
5  considered petitioner's psychological report, which placed petitioner's risk of recidivism
6  at a low level and stated he was unlikely to be involved in violence.  The report also
7  found, however, that petitioner "continue[d] to show signs of [ ] destructive nature of past
8  relationships," that "[a]ny future relationships [were] likely to show signs of stress related
9  to risk factors," and that "any potential risk for violence [ ] [was] related to this."  (Id. at
10 44.)  A representative of the Butte District Attorney voiced the district attorney's
11 opposition to parole.  (Id. at 53–57.)  After a full hearing, during which all of the above
12 evidence was considered, the Board found petitioner unsuitable for parole.  (Id. at 63.)
13     In response to the Board's decision, petitioner filed state habeas petitions, later
14 denied, in the Butte County Superior Court, California Court of Appeal, and California
15 Supreme Court.  (Id. Exs. 2, 4 & 6.)  The superior court denied the state petition on the
16 grounds that petitioner failed to establish a prima facie case for relief, and that the
17 Board's decision is supported by some evidence.  (Id. Ex. 2.)  In 2006, petitioner filed the
18 instant federal petition, alleging the Board's decision was not supported by any evidence,
19 in violation of petitioner's constitutionally protected liberty interest in parole.

## DISCUSSION

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Where there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the opinion of the Butte County Superior Court. (Ans. Ex. 2); see Nunnemaker, 501 U.S. at 801–06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

**B.     Petitioner's Claim**

Petitioner claims the Board's decision was not supported by any evidence, in violation of petitioner's constitutionally protected liberty interest in parole. (Am. Pet. at 4.)

A denial of parole complies with due process provided there is "some evidence" to support the parole board's decision. A parole board's decision deprives a prisoner of due process if such decision is not supported by "some evidence in the record," or is otherwise "arbitrary." See Superintendent v. Hill, 472 U.S. 445, 454–55 (1985); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006). Additionally, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002). Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability.

4

Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Here, in assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). Additionally, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[2] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence"

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

In that regard, however, a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003). "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's decision that petitioner would be a danger to society if released. The record contains some evidence to support the Board's finding, including the circumstances of the commitment offense, and such other factors as petitioner's psychological report, as well as the views of law enforcement.

First, some evidence clearly exists to support the Board's determination that the circumstances of the commitment offense indicated petitioner presented a risk of danger to society if released. The record contains evidence that the commitment offense was committed in an "especially heinous, atrocious or cruel manner," a circumstance tending to show parole unsuitability, see 15 Cal. Code Regs. § 2402(c), in that the offense "was carried out in an especially cruel and callous . . . [and] dispassionate manner," showing a "callous disregard for human suffering." (Id. at 63.) Specifically, petitioner arranged to have someone kill his ex-wife by blowing her up. Under such circumstances, the Board's description of the offense as "cruel and callous" is not unreasonable. The record also supports the Board's finding that petitioner's motive was "trivial" in relation to the offense, in that petitioner sought to have his ex-wife murdered because she no longer wished to have a relationship with him and/or because she assertedly took some money with her. Although at some point in the future, the circumstances of the commitment

offense may cease to have the same probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding.

Additionally, the Board expressed concern that petitioner's record failed to reassure the Board that he "would not [commit a violent crime] again." The Board stated in summary that petitioner needed therapy to "face, discuss, understand and cope with stress in a non-destructive manner," and that until such progress was made, petitioner "continue[d] to be unpredictable and [a] threat to others." (Id. at 65.)

In short, the Board's decision is supported by some evidence, including evidence other than the circumstances of the commitment offense.

## CONCLUSION

Because the record contains, at a minimum, some evidence to support the Board's finding that petitioner would present an unreasonable risk of danger to society if released, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: August 6, 2009

MAXINE M. CHESNEY
United States District Judge